IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SARAY DOKUM VE MADENI AKSAM SANAYI TURIZM A.S. | CIVIL ACTION NO. _____ |
| Plaintiff | |
| VERSUS | . |
| MTS LOGISTICS, INC. | |
| Defendant | |

**ORIGINAL COMPLAINT FOR INJUNCTIVE RELIEF,
DECLARATORY RELIEF, AND DAMAGES**

The Complaint of Plaintiff Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. ("Saray") avers as follows:

**THE PARTIES**

1. Saray is a Turkish company with its principal place of business in Istanbul, Turkey.

2. MTS Logistics, Inc. ("MTS") is a corporation incorporated under the law of the State of New York and has its principal place of business in New York.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter based upon complete diversity of citizenship pursuant to 28 U.S.C. § 1332. This is a civil action and the amount in controversy exceeds $75,000.00, exclusive of interest and costs and is between citizens of different states.

1

## VENUE

4.  Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391 because the events giving rise to the issues presented in this suit occurred in this District and this Division. Cargo (as defined below) was originated from Texas. Oxyde Chemical, Inc. ("Oxyde") arranged for the Cargo to be shipped from Houston, TX to Saray in Turkey. Oxyde contracted with MTS from Houston, TX. MTS arranged for the Cargo to be picked up and shipped from Houston, TX. The Cargo was returned to Houston, TX. Demurrage and detention charge were incurred in Houston, TX. The Cargo remains in Houston, TX. A substantial part of the events or omissions giving rise to the claim occurred in Houston Texas and a substantial part of property that is the subject of the action is situated in Houston, TX.

## FACTS AND BACKGROUND

5.  Over a period of several years, Saray has purchased a significant amount of products from its vendor Oxyde, which is a global trader of chemical products.

6.  Of relevant to the present dispute, Oxyde sold to Saray 65 containers of PVC resin, and engaged MTS as a Non-Vessel Operating Common Carrier ("NVOCC") to arrange for shipment of the 65 containers (the "Cargo") from Houston, TX to Istanbul Turkey.

7.  MTS issued bills of lading to Oxyde for the Cargo. MTS then arranged for the Cargo to be shipped via Mediterranean Shipping Company, SA ("MSC") to Istanbul, Turkey via two separate shipments, one containing 22 containers, the other 43. MSC issued a Sea Waybill to MTS naming MTS as the shipper.

8.  While the shipments were in transit to Istanbul, Turkey, U.S. Customs and Border Protection, Houston Seaport ("US Customs") sent Notices of Redilvery to MSC.

9.  Under information and belief, MSC unloaded the Cargo in Portugal and then arranged for the Cargo to be returned to Houston, TX. Neither MSC nor MTS immediately

notified either Oxyde or Saray regarding the Notices received from US Customs as required by 15 CFR §758.8. Among other things, by sending immediate notification as required, attempts could have been made to mitigate the costs.

10. Once the Cargo arrived in Houston, TX, under information and belief, it was placed into storage at a MSC facility and access to the Cargo was granted to US Customs.

11. Under information and belief, US Customs explained the reason for the demand of the return of the Cargo was because it had credible evidence of an intended transshipment of the Cargo. Notwithstanding, after having inspected the Cargo noting that it contained just what was represented (PVC resin), US Customs released the Cargo.

12. Upon release of the Cargo by US Customs, MSC then sought to collect its alleged charges (totaling allegedly in excess of $1,268,150.00 for detention, and demurrage (plus its costs of shipping the Cargo back to Houston) from MTS, the party with whom it had contracted and named as the shipper on the MSC Bill of Lading, threatening MTS that if a discounted sum of $701,640.55 was not paid by a certain date that US Customs would place the Cargo into General Order for lien foreclosure and liquidation and that MSC would then seek to entire sum (not discounted) as well as all other charges for shipping, lien foreclosure and additional detention and demurrage.

13. Under the belief that US Customs would send the Cargo to General Order as was being alleged by MSC, MTS paid the discounted sum to MSC plus an additional, though unexplained, sum of approximately $59,000.00 and took possession and custody of the Cargo.

14. MTS is now demanding reimbursement for all demurrage, detention and shipping costs or threatening to foreclose on the Cargo and recoup all of its costs.

### COUNT 1 - DECLARATORY JUDGMENT ACTION

15. The foregoing paragraphs are incorporated herein by reference.

16. The Court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201 and 2202

17. An actual controversy exists between Saray and MTS and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 and 2202, this court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

18. MTS claims that it is entitled to foreclose on the Cargo and recoup all of its costs based on a carrier's lien.

19. However, any carrier lien existed in favor of MSC, as the carrier of the goods who incurred the additional costs.

20. When MTS paid a settlement and accord to MSC for release of the cargo, the carrier's lien was extinguished.

21. Accordingly, Saray seeks a declaratory judgment that MTS does not possess a carrier's lien over the Cargo.

### COUNT 2 – APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

22. The foregoing paragraphs are incorporated herein by reference.

23. Saray requests the Court to enter a Temporary Restraining Order to grant it equitable and injunctive relief thereby preventing MTS from selling the Cargo through private sale pursuant to a non-existent carrier's lien.

24. As stated above, MTS does not have a valid carrier's lien, and thus, is not entitled to sell the Cargo pursuant to this non-existent carrier's lien. Therefore, Saray is substantially likely to prevail on the merits of its declaratory action.

25. Additionally, if MTS has a separate, maritime lien over the Cargo, the Cargo cannot be sold at private sale, and instead, MTS must follow the procedures outlined in the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims to execute on this claimed maritime lien.

26. Saray will be irreparably harmed if the property is illegally sold by MTS. The PVC is necessary for Saray to produce PVC profiles to make Windows and Door systems. If the items are sold, it will increase the delay in Saray recovering the items that are necessary for its line of business, as the PVC will need to be reproduced and reshipped. The increased delay will further reduce Saray's business goodwill and will likely result in the loss of customers.

27. Accordingly, Saray requests the Court immediately enter a Temporary Restraining Order prohibiting MTS from illegally selling the Cargo, and after a hearing on the matter enter an order granting a preliminary and permanent injunction prohibiting MTS from selling the Cargo.

## COUNT 3 – BREACH OF CONTRACT

28. The foregoing paragraphs are incorporated herein by reference.

29. Oxyde and MTS contracted for the shipment of goods from Houston, Texas to Istanbul, Turkey, to ultimately be delivered to Saray in Turkey.

30. MTS's performance under its contract with Oxyde was for the direct benefit of Saray, and the performance owed under the contract between Oxyde and MTS is part of Oxyde carrying outs its obligations under a separate between it and Saray.

31. Accordingly, Saray is a "creditor beneficiary" of the contract between Oxyde and MTS, thus making it a third-party beneficiary.

32. As a third party beneficiary, Saray can enforce the terms of the contract.

33. MTS breached the contract by failing to timely transport the Cargo from Houston, Texas to Istanbul, Turkey. To date, the Cargo has still not been delivered.

34. As a result of this contractual breach and the failure to timely deliver the Cargo, Saray incurred damages in the form of increased costs and expenses.

35. Therefore, because MTS breached the terms of the contract with Oxyde, Saray—as a third-party beneficiary—respectfully requests that this Court issue a judgment finding that MTS breached the terms of its contract with Oxyde and award Saray all damages resulting from such breach.

### COUNT 4 – NEGLIGENCE

36. The foregoing paragraphs are incorporated herein by reference.

37. Upon receiving knowledge of the Notice of Redelivery issued by U.S. Customs to MSC, MTS failed to immediately notify either Oxyde or Saray.

38. As a result of this failure, neither Saray nor Oxyde were able to intervene to help mitigate costs or otherwise prevent the expenses allegedly incurred by MSC to redeliver the Cargo to Houston, Texas.

39. Accordingly, as a result of MTS's negligence, Saray seeks an award of damages to compensate for the increased costs and expenses that MSC allegedly incurred, and for which MTS now seeks from Saray and Oxyde, due to MTS's failure to notify either Saray or Oxyde of the Notice of Redelivery.

### COUNT 5 – CONVERSION

40. In the alternative, if the Court does not enter a temporary restraining order/preliminary injunction, and MTS sells the Cargo at private sale, MTS is liable for conversion of the Cargo.

41. It has been alleged in a related suit that title to the Cargo passed to Saray upon the Cargo departing from Texas on the initial voyage.

42. While Saray does not admit ownership, if the Court determine that Saray does possess title to the Cargo, then MTS is liable for conversion of the Cargo if it is sold at a private sale.

### COUNT 6 – ATTORNEYS' FEES

43. The foregoing paragraphs are incorporated herein by reference.

44. Saray also seeks an award of its costs and reasonable and necessary attorneys' fees incurred herein.

### PRAYER

**WHEREFORE**, Saray respectfully requests that this Court enter a Temporary Restraining Order prohibiting MTS from illegally selling the Cargo, and after a hearing on the matter enter an order granting a preliminary and permanent injunction prohibiting MTS from selling the Cargo, or in the alternative, if the Cargo is sold, to find MTS liable for conversion. Furthermore, Saray requests that MTS be cited to appear and answer herein and that upon final trial of this matter, this Court find that MTS breached the contract with Oxyde and award Saray damages resulting from the breach, as a third-party beneficiary. Saray also seeks a judgment from the Court finding that MTS was negligent and awarding damages to compensate for the increased costs and expenses that MSC allegedly incurred, and for which MTS now seeks from Saray and Oxyde. Additionally, Saray respectfully requests for this court to declare by judgment that MTS does not have a valid carrier's lien. Finally, Saray requests it be awarded its taxable costs of Court and reasonable and necessary attorneys' fees and such other and further relief to which it may show itself justly entitled.

[*Signatures on following page.*]

Dated: July 11, 2017

Respectfully submitted,

/s/ Jefferson R. Tillery
JEFFERSON R. TILLERY
Attorney-in-Charge
Southern District of Texas Bar No. 295817
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8616
Facsimile:     (504) 582-8015
jtillery@joneswalker.com

-and-

Lara D. Pringle
Texas Bar No. 24056164
Jones Walker LLP
First City Tower
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Telephone: 713.437.1866
Facsimile: 713.437.1810
lpringle@joneswalker.com

-and-

JUSTIN J. MAROCCO (*pro hac vice* forthcoming)
Jones Walker LLP
8555 United Plaza Boulevard, 5th Floor
Baton Rouge, Louisiana 70809-7000
Telephone: (225) 248-2415
Telecopier: (225) 248-3115
jmarocco@joneswalker.com

**Attorneys for Plaintiff Saray Dokum ve Madeni Aksam Sanayi Turizm A.S**